IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


CLIFFORD JERMAL HOPKINS,
       Petitioner,

vs.                                 Case No.:  3:11cv466/LAC/EMT

KENNETH S. TUCKER,
       Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 15, 17).  Petitioner filed a reply (doc. 23).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* docs. 15, 17).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2008-CF-4808, with one count of principal to a robbery with a deadly

_____

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 17).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

weapon (Count 1) and one count of principal to aggravated battery with great bodily harm or with a deadly weapon (Ex. A at 1). Following a jury trial, he was found guilty as charged (Ex. A at 26–27, Ex. C). On September 23, 2009, Petitioner was sentenced to eight (8) years of imprisonment followed by ten (10) years of probation on Count 1, and eight (8) years of imprisonment followed by seven (7) years of probation on Count 2, to run concurrently with the terms of imprisonment and probation on Count 1, and with pre-sentence jail credit of 6 days (Ex. A at 72–94, 111–17).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-5069 (Exs. D, E). The First DCA affirmed the judgment per curiam without written opinion on August 25, 2010, with the mandate issuing September 13, 2010 (Exs. F, G). Hopkins v. State, 43 So. 3d 695 (Fla. 1st DCA 2010) (Table). The First DCA denied Petitioner's motion for rehearing on October 11, 2010 (Ex. H). Petitioner did not seek further review.

On October 15, 2010, Petitioner filed a motion for reduction of sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. I at 1–5). The state circuit court summarily denied the motion on October 27, 2010 (id. at 54).

On December 28, 2010, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. I at 55–83). The state circuit court summarily denied the motion on February 4, 2011 (id. at 213–16). Petitioner appealed the decision to the First DCA, Case No. 1D11-1601 (Ex. J). The First DCA affirmed the judgment per curiam without written opinion on July 13, 2011, with the mandate issuing August 9, 2011 (Exs. L, M). Hopkins v. State, 65 So. 3d 1058 (Fla. 1st DCA 2011) (Table). Petitioner sought review of the decision by the Supreme Court of Florida, Case No. SC11-1487, but the court dismissed the petition for lack of jurisdiction on August 2, 2011 (Ex. N). Hopkins v. State, 69 So. 3d 278 (Fla. 2011) (Table).

On April 20, 2011, Petitioner filed a habeas petition in the First DCA, Case No. 1D11-2138, alleging ineffective assistance of appellate counsel (Ex. O). The First DCA denied the petition on the merits on June 10, 2011 (Ex. P). Hopkins v. State, 63 So. 3d 877 (Fla. 1st DCA 2011). Petitioner sought review of the decision by the Supreme Court of Florida, Case No. SC11-1397, but the court dismissed the petition for lack of jurisdiction on July 15, 2011 (Ex. N). Hopkins v. State, 67 So. 3d 199 (Fla. 2011) (Table).

On June 21, 2011, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. K at 1–8). The state circuit court summarily denied the motion on June 30, 2011 (Ex. S).

Petitioner filed the instant federal habeas action on September 11, 2011 (doc. 1). Respondent does not raise a statute of limitations defense (doc. 15 at 4).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."

Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

  If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.

*See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").    The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the

petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
         (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003).

_____

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or

unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd, 250 F.3d at 1313. First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. Id. The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. Id.

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

Ground One:  "The Petitioner's 14th Amendment right of due process was violated as to where:  the State failed to overcome Petitioner's hypothesis of innocence, i.e., he knew nothing of suspect [sic] intent to rob the victim and he, Petitioner, did nothing to facilitate suspect [sic] commission of the robbery."

Petitioner argues the First DCA violated his due process rights by affirming his conviction when the State failed to overcome his hypothesis of innocence and failed to prove beyond a reasonable doubt that he facilitated commission of the crimes by another person, Ivan Howard (doc. 1 at 5–10).  Petitioner's hypothesis of innocence was that although he was present when Ivan Howard committed the crimes, he did not aid Howard in commission of the crimes, and he did not intend to participate in them (*id.*).

Respondent contends Petitioner's claim raises only a state law issue, that is, that the state court misapplied Florida "circumstantial evidence rule," despite Petitioner's couching his claim in terms of due process (doc. 15 at 5).  Therefore, the claim does not provide a basis for federal habeas relief (*id.*). Respondent additionally contends Petitioner failed to properly exhaust a federal claim in the state courts (*id.* at 5–13).  Respondent states Petitioner argued on direct appeal that the trial court erred by denying his motion for JOA; however, his arguments were based solely on state law (*id.*).  Therefore, the federal claim was not fairly presented (*id.*).  Respondent argues that any attempt by Petitioner to return to state court to exhaust the claim would be futile, because a second direct appeal is unavailable; therefore, the claim is procedurally defaulted and barred from federal review (*id.* at 13).  Without waiving the exhaustion defense, Respondent argues Petitioner's claim is without merit (*id.* at 13–21).

In Petitioner's reply, he contends his state law claim demonstrates a violation of his federal due process rights (doc. 23).

In Petitioner's brief on direct appeal, he argued the trial court erred in denying his motion for judgment of acquittal where the State failed to overcome his hypothesis of innocence, that is, that

he knew nothing of Ivan Howard's intent to rob the victim, and he did nothing to facilitate Howard's commission of the robbery (Ex. D).  Petitioner argued there was no evidence that he in any way aided, helped, or encouraged Ivan Howard to commit the robbery or that he intended for the robbery to occur (*id.*).  He argued the evidence showed he intervened in Howard's battery of the victim, telling Howard to take the victim's money and leave him alone (*id.*).  Petitioner argued the State's case relied entirely upon a series of inferences from circumstantial evidence, which were insufficient to refute Petitioner's reasonable hypothesis of innocence (*id.*).

Petitioner framed his claim of trial court error in terms of state law without making any reference to federal law, and in the body of his argument he made no specific reference to the United States Constitution or federal law, and he cited no federal cases.  He argued Florida law only. Nothing in Petitioner's brief put the state court on notice that it was being presented as a federal constitutional claim.  Therefore, the undersigned concludes that Petitioner's challenge to the sufficiency of the evidence was not fairly presented to the state court as a federal constitutional claim.  *See, e.g.*, Ramos v. Sec'y, Dep't of Corr., 441 F. App'x 689, 696–97 (11th Cir. 2011) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner made only passing reference to federal constitutional right to due process in arguing that trial court improperly denied motion for judgment of acquittal because State failed to sufficiently prove premeditation element of murder); Pearson v. Sec'y,  Dep't of Corr., 273 F. App'x 847, 850 (11th Cir. 2008) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard); Cook v. McNeil, 266 F. App'x 843, 845–46 (11th Cir. 2008) (petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; even though petitioner moved for judgment of acquittal and although Florida courts assess the sufficiency of the evidence under the standard applied in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 2798, 61 L. Ed. 2d 560 (1979), petitioner cited exclusively to the state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due

process to the attention of the state appellate court."). *But see* Mulinix v. Sec'y for Dep't of Corr, 254 F. App'x 763 (11th Cir. 2007) (petitioner's federal sufficiency of evidence claim was exhausted where petitioner presented identical argument to state and federal courts, and Florida courts' sufficiency of evidence standard was identical to federal standard).[7]

In Petitioner's Rule 3.850 motion, he argued that the trial court's denial of his motion for judgement of acquittal "den[ied] him the constitutional rights of equal protection and due process" (Ex. I at 70). This cursory and conclusory phrase, unaccompanied by citations to federal law, was insufficient to fairly present a federal claim to the Florida courts. *See* Zeigler, 345 F.3d at 1308 n.5. Moreover, even if Petitioner's reference to constitutional principles of equal protection and due process were sufficient to alert the Florida court to a federal claim, the state court denied the claim on an independent and adequate state procedural rule. The state circuit court determined that Grounds One and Two of Petitioner's Rule 3.850 motion, both of which challenged the sufficiency of the evidence, were procedurally barred from review in a collateral proceeding, because they could have and should have been raised on direct appeal (Ex. I at 213–14). This procedural ruling constituted an independent and adequate state rule of decision. *See* Judd, 250 F.3d at 1313.

Now, any further attempt at exhaustion in Florida courts would be futile because Petitioner's claims would be procedurally barred under Florida law. *See* Rodriquez v. State, 919 So. 2d 1252, 1262 n.7 (Fla. 2005); Smith v. State, 445 So. 2d 323, 325 (Fla. 1983). Moreover, Petitioner has made none of the requisite showings to excuse his default. He has not alleged cause for his default;[8] nor has he demonstrated he is entitled to review of his claim through the "fundamental miscarriage of justice" exception to the procedural bar. Therefore, Ground One is procedurally defaulted and will not be considered in this court.

B.    Ground Two:  "Petitioner was denied the Sixth Amendment right to effective assistance of counsel where trial counsel failed to move trial court to properly impeach the State's witness prior to trial."

---

[7] The undersigned cites unpublished opinions of the Eleventh Circuit only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

[8] Although Petitioner raised claims of ineffective assistance of appellate counsel in his state habeas petition, he did not argue that counsel was ineffective for failing to present a federal sufficiency of the evidence claim on direct appeal (Ex. O).

Petitioner claims defense counsel was ineffective for "failing to move the trial court to impeach the State's key witness" (doc. 1 at 10–13).  Petitioner contends that the testimony of the victim, Tristen Meeks, was not credible because (1) Meeks testified that prior to the crimes, he had smoked marijuana and taken medication that made him sleepy, (2) Meeks testified he was addicted to marijuana, which affected his ability to recall past events, (3) Meeks testified he was "woozy" after Ivan Howard shot him and did not actually see what Howard did after he shot him, (4) Meeks testified his ears were ringing after he was shot, so he may not have heard anyone screaming, shouting, or yelling, (5) Meeks's testimony conflicted with the testimony of his cousin, Mr. Young, (6) Meeks's testimony conflicted with testimony of another witness, Ms. George, (7) Meeks's testimony contradicted testimony of Officer James Reese, (8) Meeks testified he did not recall whether he called Petitioner or Petitioner called him prior to their meeting at Petitioner's home regarding the purchase of a vehicle, (9) Meeks first testified Petitioner was outside his (Petitioner's) home when Meeks arrived to purchase the vehicle, but then testified that Petitioner was not there, and (10) Meeks testified he could not recall Petitioner's demeanor prior to the robbery (*id.*).  Petitioner contends Meeks was biased and "showed a defect of capacity, ability, or opportunity to observe, remember, or recount the matters about which he testified," and counsel should have impeached his testimony on these grounds (*id.* at 13).

Respondent concedes this claim was adjudicated by the state courts in the Rule 3.850 proceeding (doc. 15 at 25).  Respondent contends the state court's adjudication of the claim was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (*id.* at 26–28).

       1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.' " Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal.  *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 3 in his Rule 3.850 motion (Ex. I at 78–81). The state court adjudicated the claim as follows:

> The Defendant claims that his counsel was ineffective for failing to "properly" impeach the State's witness Tristen Meeks.  The record conclusively demonstrates that the Defendant is not entitled to relief on this claim.  The Supreme Court of Florida has recently articulated the standard regarding claims of ineffective assistance of counsel as follows:
>
>> In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both that trial counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive him of a fair trial.  Strickland v. Washington, 466 U.S. 668 (1984).  As to the first prong, the defendant must establish

that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687; see also Cherry v. State, 659 So. 2d 1069, 1072 (Fla. 1995).  For the second prong, "Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different."  Wong v. Belmontes, 130 S. Ct. 383, 390–91 (2009) (quoting Strickland, 466 U.S. at 694).

Stewart v. State, 37 So. 3d 243, 247–48 (Fla. 2010).

The Court finds that Defendant's counsel cross examined Mr. Meeks. Attachment 2.  As described by the Defendant's own motion, the potential issues regarding Mr. Meeks' testimony asserted by the Defendant in the instant motion were already before the jury.  Therefore, the Defendant cannot demonstrate Strickland prejudice as to this claim.

In other words, the Defendant cannot demonstrate how he was prejudiced by his counsel's purported deficiency in failing to impeach Mr. Meeks' testimony when, as Defendant describes, the very points of impeachment (i.e., Mr. Meeks' state of mind and ability to recall events, including potential deficiencies caused by drug use) were brought before the jury on direct or cross examination.[FN 1:  One segment of Mr. Meeks' testimony was taken as a proffer outside of the presence of the jury. Attachment 2, at 165–173.  However, testimony concerning Mr. Meeks' drug use was testified to by Mr. Meeks before the jury.  Attachment 2, at 207–208.] Attachment 2, at 186–188; 192–194; 202–208.  Indeed, Defendant's counsel raised the issue of Mr. Meeks' marijuana use during closing argument.  Attachment 2, at 277–278.

It is not proper method of impeachment for one witness to comment on the credibility or testimony of another witness.  Charles W. Ehrhardt, Florida Evidence, § 608.1 at 518 (2010 ed.).  Accordingly, counsel cannot be considered "deficient" for failing to attempt to elicit any such testimony.

Furthermore, as the Defendant describes in his motion, all of the witnesses' testimonies were before the jury.  Attachment 2, at 123–128; 137; 161–162; 186–188; 192–194; 199–208; 253.  Thus, those conflicts in the witnesses' accounts were necessarily resolved at trial.  It was within the province of the jury to resolve any conflict in the evidence that was presented.  The Court would note that Defendant's counsel did highlight the issue of the conflict in the evidence as to how much money was recovered by police in comparison with how much Mr. Meeks testified was taken.  Attachment 2, at 277–278.  Counsel's failure to highlight the other conflicts in the witnesses' accounts as described by the Defendant did not

deprive the Defendant of a fair trial, a trial whose result is reliable. Strickland, supra
at 687; Attachment 2, at 274–281.

(Ex. I at 214–16).

Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower
court's decision without written opinion (Ex. L).

To the extent Petitioner contends defense counsel failed to impeach Tristen Meeks's
testimony on the points identified by Petitioner, he failed to show prejudice under Strickland.  As
the state court found, the points of impeachment identified by Petitioner were presented to the jury
through the direct and cross examination testimony of Mr. Meeks during trial (Ex. C at 144–210),
and through the testimony of other witnesses, including testimony which conflicted with Meeks's
testimony on certain matters (Ex. C).  Additionally, defense counsel argued during closing argument
that Meeks's perceptions were impaired due to his smoking marijuana on the day of the crimes, and
that his ability to recall events was questionable (id. at 277).  Counsel also highlighted the fact that
Meeks's testimony regarding the amount of money stolen from him conflicted with the police
officer's testimony regarding the amount recovered from the robber (id. at 278–79).  Counsel also
argued that Meeks's testimony as to certain matters was purely speculative (id. at 280–81).  Because
the jury was presented with all of the impeaching information identified by Petitioner, he failed to
show a reasonable probability the outcome of trial would have been different had counsel made
further efforts to impeach Mr. Meeks's testimony.

Additionally, to the extent Petitioner contends defense counsel should have challenged Mr.
Meeks's competency to testify or sought his disqualification as a witness, he failed to show deficient
performance or prejudice.  In Florida, every person is competent to be a witness except as otherwise
provided by statute.  See Fla. Stat. § 90.601.  A person is disqualified to testify when the court
determines the person is (1) incapable of expressing himself concerning the matter in such a manner
as to be understood, or (2) incapable of understanding the duty of a witness to tell the truth.  See Fla.
Stat.  § 90.603.  Additionally, a witness may not testify to a matter unless the witness has personal
knowledge of the matter.  See Fla. Stat.  § 90.604.  In the instant case, Petitioner's allegations do not
show that defense counsel had a meritorious basis for either challenging Mr. Meeks's competency
to testify or seeking his disqualification as a witness.  Petitioner thus failed to show that counsel's

failure to assert such challenges was unreasonable; and he likewise failed to show a reasonable probability the trial court would have properly excluded Mr. Meeks's testimony had counsel made efforts to do so.

Petitioner failed to demonstrate that the state court's adjudication of this ineffective assistance of counsel claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to federal habeas relief on Ground Two.

V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 21<u>st</u> day of August 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**